

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ZA/CAC
F. #2010R00057

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 15, 2015

<u>By Hand and ECF</u>

Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Abid Naseer</u>
              <u>Criminal Docket No. 10-19 (S-4) (RJD)</u>

Dear Judge Dearie:

      The government respectfully moves <u>in limine</u> to admit documents recovered from media belonging to former al-Qaeda chief Usama bin Laden at the trial in this matter scheduled to commence on February 17, 2015. For the reasons set forth below, testimony regarding the acquisition of the documents, and the documents themselves, are admissible pursuant to the Federal Rules of Evidence.

**I.**    **<u>Background and Relevant Facts</u>**

    A.    <u>Case Background</u>

      The indictment charges the defendant with three criminal violations: providing material support to al-Qaeda, conspiring to provide material support to al-Qaeda and conspiring to use a destructive device in relation to a crime of violence.

      The defendant is a Pakistani citizen who resided in Manchester in April 2009, when he was arrested by the Greater Manchester Police. Beginning in 2008, al-Qaeda external operations leaders and facilitators located in the Waziristan region of Pakistan tasked the defendant, three American operatives, and a Norway-based operative to conduct terrorist attacks in the United States and Europe. The defendant and the other operatives traveled to Pakistan during the same general time period in 2008 and met with al-Qaeda leaders who trained them in the use of weapons and explosives. They subsequently returned to their countries of residence to begin preparing for attacks. Al-Qaeda leadership based in Pakistan maintained operational contact with the three cells through email and phone. Between November 2008 and April 2009, Naseer and several co-conspirators from

Manchester and Liverpool, England, prepared to conduct a terrorist attack in Manchester in mid-April 2009. The defendant and his co-conspirators conducted reconnaissance at potential target locations and maintained frequent contact with al-Qaeda leadership by email. British law enforcement disrupted the plot and arrested the defendant and his co-conspirators in April 2009.

      B.    The Bin Laden Media

At trial, the government intends to introduce eight documents recovered from media belonging to Usama bin Laden (the "Bin Laden media"). These documents have been produced to the defendant and the Court and are identified as Bates No. 1/21/2015 1-3 and Bates No. 2/13/2015 1-57. The government will seek to introduce them through the testimony of Supervisory Special Agent Alexander Otte ("SSA Otte") of the Federal Bureau of Investigation ("FBI"), who will testify as to the acquisition of the media containing the documents, and through the testimony of an FBI forensic examiner, who will testify that the documents at issue were recovered from certain pieces of media described by SSA Otte.

      1.    Testimony of SSA Alexander Otte

SSA Otte will testify regarding the acquisition of the Bin Laden media. Specifically, he is expected to testify that he was deployed to Afghanistan on April 28, 2011 in order to ensure the appropriate acquisition, documentation, and establishment of chain of custody of any items seized during a planned Department of Defense ("DOD") operation to raid the compound of Usama bin Laden. SSA Otte was told by DOD officials upon his arrival in Afghanistan that they planned to raid a compound at which Usama bin Laden was believed to be hiding on the evening of May 1, 2011 (Afghanistan time). At approximately 3:50 a.m. Afghanistan time on May 2, 2011, an aircraft containing members of the DOD raid force landed at the base in Afghanistan where SSA Otte was stationed. SSA Otte took custody of and began processing several items, including media and electronic evidence, that members of the raid force had in their possession. Among those items are three pieces of media from which the documents at issue were recovered. SSA Otte will further testify that at approximately 4:00 a.m. Afghanistan time, the raid force brought the body of Usama bin Laden into the hangar at the base where SSA Otte was stationed.

SSA Otte catalogued, processed and vouchered all of the media recovered by the raid force and personally transported that media to the FBI Laboratory in Quantico, Virginia on May 2, 2011. The media was placed into evidence storage vault at the FBI Laboratory, and its every removal from that vault has been documented in FBI business records, specifically FD-1004 Chain of Custody forms.

      2.    The Documents

The documents at issue in this case were recovered from three pieces of media SSA Otte obtained from the raid force and vouchered into evidence. They contain al-Qaeda correspondence between Usama bin Laden, his Chief of External Operations Saleh al-

Somali, his third-in-command Sheikh Saeed al-Masri, his General Manager Sheikh Mahmoud, and others. The contents of the documents contained on the media demonstrate that the media belonged to al-Qaeda generally, and to Usama bin Laden in particular.

For example, the documents explicitly reference **Usama bin Laden**, see 6[1] ("the call of Usama bin Laden for jihad against the blasphemous government of Pakistan"); 17 ("I am with Usama bin Laden"); **Usama bin Laden's family members**, see 11 (son Khalid), 16 (son Hamza); 38 (son Hamza); 42 (son Hamza); 43 (son Khalid); 53 (wife Um Hamza); **deliberations of al-Qaeda's Shura Council**, see 2, 7, 50; **al-Qaeda's media wing, as-Sahab**, see 9, 17, 18, 40, 56; **the writers' membership in al-Qaeda**, see 5 ("We leaked through intermediaries . . . that we (al-Qaeda) have readied earthshaking large operations that will break of the back of Pakistan"); 15 ("they want to talk to us, al-Qaeda"); **strikes against al-Qaeda members and safehouses in Waziristan**, see 1-2, 38; **the 9/11 attack on the World Trade Center**, see 21, 22, 28, 29, 37, 44, 56; **attacks against Americans**, see 8 ("killing and wounding dozens of U.S. soldiers"); 13 ("having to strike the Americans"); 15 ("our fight is against the Americans"); 21 ("our war with America"); 51 ("our war with our bigger enemy, America"); **and other terrorist groups**, see 15 (Tehreek Taliban Pakistan); 15 (Taliban); 43 (Tehreek Taliban Pakistan); 43 (Haqqani Network); 51 (Taliban). One document explicitly outlines the oath members must take in order to join al-Qaeda:

> We, of course, take the pledge of allegiance on behalf of Sheikh Usama bin Laden. We say in the wording something like: I accept your allegiance on behalf of Sheikh Usama, [pledging] to listen and obey, in hardship and ease, and to follow whomsoever Sheikh Usama assigns to be my Amir on the jihad for the sake of God, for the establishment of the religion of God, and the rule of Islam that governs the law of God, and to memorize the secrets of the group, and to be where I am ordered to.

See 39.

## II.   Applicable Law

Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.

"A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds." United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000); see Fed. R. Evid. 803(3) ("A statement of the declarant's then-existing state

---

[1] All page number references in this paragraph are to the batch of documents beginning with Bates No. 2/13/2015.

3

of mind (such as motive, intent, or plan)" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness."); Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295-96 (1892) (holding that declarations of intention "are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue"); Fed. R. Evid. 803 advisory committee note to paragraph (3) ("The rule of Mutual Life Ins. Co. v. Hillmon [citation omitted], allowing evidence of intention as tending to prove the doing of the act intended, is, of course, left undisturbed."). Rather, "[u]nder Fed. R. Evid. 803(3), hearsay statements reflecting a declarant's intentions or future plans are admissible to prove subsequent acts." United States v. Cicale, 691 F.2d 95, 103 (2d Cir. 1982); United States v. DeJesus, 806 F.2d 31, 35 (2d Cir. 1986) ("Under [Fed. R. Evid. 803(3)], hearsay statements reflecting a declarant's intentions or future plans are admissible to prove subsequent acts.").

The Second Circuit has held on several occasions that "a declarant's out of court statement of intent was admissible in evidence against a person other than the declarant . . . [when] there was independent evidence that connected the declarant's statement with the non-declarant's activities." Best, 219 F.3d at 198; see also United States v. Delvecchio, 816 F.2d 859, 863 (2d Cir. 1987); United States v. Badalamenti, 794 F.2d 821, 825-26 (2d Cir. 1986); Cicale, 691 F.2d at 103-04. For example, in Cicale, the court held than an out-of-court declarant's statement that he was going to meet his "drug source" was admissible to prove that the defendant was his "drug source" when combined with evidence that the declarant met with the defendant shortly after making the statement. 691 F.2d at 103. "Corroboration of the nature of the transaction need not be eyewitness observations and may be provided by circumstantial evidence." Best, 219 F.3d at 199.

### III.   Admissibility Analysis

At trial, the government intends to argue to the jury that they can infer that the documents at issue were associated with al-Qaeda and Usama bin Laden based on (1) SSA Otte's testimony regarding his assignment and activities in Afghanistan; (2) the fact that the documents were transported to the base in Afghanistan alongside the body of Usama bin Laden; and (3) the contents of the documents themselves. Each of these facts is admissible pursuant to the Federal Rules of Evidence, and therefore the government should be permitted to argue the inference cited above to the jury.

SSA Otte's testimony that he was deployed to Afghanistan in order to ensure the appropriate acquisition, documentation, and establishment of chain of custody of any items seized during a planned DOD operation to raid the compound of Usama bin Laden is admissible. The statement is not hearsay because SSA Otte is not an out-of-court declarant; rather, he will be testifying in Court as to his intentions, plans, and assignment between April 28 and May 2, 2011, and is available to be cross-examined about those facts. Similarly, SSA Otte's testimony about the processing and transport of the media, as well as the arrival of the body of Usama bin Laden, are also not hearsay because they are in-court statements about what he personally did and observed.

4

SSA Otte's testimony that DOD officials told him on May 1, 2011 that they were planning to conduct a raid on a compound associated with Usama bin Laden is admissible, pursuant to Rule 803(3), to prove that the raid occurred. Because the DOD officials with whom SSA Otte spoke before the raid occurred were not members of the raid force, the statement of intent is being offered in this case to prove the actions in accordance therewith of a non-declarant (i.e., the raid force). In such situations, the admissibility of the statement turns on "whether there was independent evidence that connected the declarant's statement with the non-declarant's activities." Best, 219 F.3d at 198 (noting that the required evidence can be either direct or circumstantial). That evidence exists here.

Principally, the statement is corroborated by SSA Otte's eyewitness testimony to the arrival of the raid force, bearing the body of Usama bin Laden, at the base at the time that the raid was supposed to have concluded. The fact that the declarant and the non-declarants are both members of DOD further "connects" the declarant's statement with the non-declarants' activities. In addition, the documents found on the media that arrived with bin Laden's body contain numerous references to bin Laden, his family and al-Qaeda. The documents therefore provide further corroboration for the statement of intention to conduct a raid force at bin Laden's compound that DOD officials made to SSA Otte.

Finally, the references to bin Laden and al-Qaeda in the documents themselves provide an additional basis for the government to argue to the jury that the documents and media belonged to bin Laden. As described in Part I.B.2, supra, those references are extensive and replete. Of course, the defendant is free to argue to the contrary, but there is no evidentiary bar to either party in this case urging the jury to draw the inference about the connection between the media and bin Laden that the party seeks.

## IV. Conclusion

    For the foregoing reasons, the government seeks to admit documents recovered from media belonging to Usama bin Laden at trial in this matter and to elicit the testimony described above concerning the acquisition and processing of that media.

                  Respectfully submitted,

                  LORETTA E. LYNCH
                  United States Attorney

           By:  /s/ Zainab Ahmad
                  Zainab Ahmad
                  Celia A. Cohen
                  Michael P. Canty
                  Assistant U.S. Attorneys
                  (718) 254-7000

cc: Abid Naseer (via certified mail)
  James Neuman (via ECF and email)