

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ZA:CAC/MPC
F. #2010R00057

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 22, 2015

By Hand and ECF

Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Abid Naseer
     Criminal Docket No. 10-19 (S-4) (RJD)

Dear Judge Dearie:

   The government respectfully moves <u>in limine</u> to request that the Court prohibit the members of the press from sketching images of the five members of the U.K. Security Service, otherwise known as MI-5, who are expected to testify at trial.  This narrowly tailored request is made to protect the identity of these witnesses.  The factual basis for this request is the same factual basis that was presented to the Court in support of the government's January 12, 2015 motion to allow the witnesses to testify using their personal identification numbers rather than their names and wearing light disguises, which the Court granted on January 26, 2015.  <u>See</u> Memorandum & Order dated January 26, 2015, ECF Docket No. 382 ("Memorandum & Order").

## Background and Relevant Facts

   The indictment charges the defendant with three criminal violations: providing material support to al-Qaeda, conspiring to provide material support to al-Qaeda and conspiring to use a destructive device in relation to a crime of violence.  Al-Qaeda has been designated a foreign terrorist organization by the United States since October 8, 1999.  Al-Qaeda has carried out numerous deadly terrorist attacks around the world, including within the United States and the United Kingdom.  The primary tool used by al-Qaeda in carrying out its objectives is violence.

   At trial, the government intends to call five MI-5 officers (the "Officers") to testify regarding surveillance they conducted of the defendant and his co-conspirators between March 14, 2009 and April 8, 2009.  The testimony of these officers is essential to

the government's case-in-chief because the Officers were the sole witnesses to many of the operational activities undertaken by the defendant in preparation for his plan to conduct an al-Qaeda attack in Manchester, e.g., meetings with co-conspirators, sending coded messages to al-Qaeda leadership, scouting potential target locations, etc.

The Officers the government intends to call as witnesses continue to work in an undercover capacity on other sensitive investigations, many of which involve national security matters and threats against the United Kingdom. In addition, Security Service officers may operate covertly overseas, in areas where public disclosure of their identities would pose a significant risk to their safety. The work of the Security Service is such that its Officers are subject to particular threats from terrorist and other criminal organizations. Due to the nature of its work, many terrorist organizations, including al-Qaeda, view the Security Service's members as attractive targets. As such, Security Service officers are all authorized to work undercover and to not disclose their employment to anyone other than immediate members of their family. Officers seek to maintain their cover throughout their career and even into retirement due to the significant threats to their safety that arise in light of the nature of their work. At the Court's request, the Security Service provided a declaration setting forth the ramifications of disclosing the identity of an MI-5 officer, which the government filed under seal on January 23, 2015.

On January 12, 2015 the government moved in limine to allow these officers to testify at trial (1) using their personal identification numbers rather than their names; and (2) wearing light disguises. On January 26, 2015, the Court granted the government's request to allow the witness to testify using personal identification numbers rather than their names and wear light disguises in the form of wigs and light make up. See Memorandum & Order.

The government submits the instant application because disclosure of the identity and appearance of the Officers, even in the form of a sketch, would cause real harm to the United Kingdom and to the shared national security interests of the U.S. and U.K, and would pose a serious risk to the safety of the Officers scheduled to testify. Public disclosure of their identities, even by way of sketches, would also impair the Officers' ability to operative effectively within the Security Service in the future.

### **Applicable Law**

The First Amendment protects the right of the press to attend trial proceedings. Press–Enterprise Co. v. Superior Court, 464 U.S. 501 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604 (1982); United States v. Yonkers Bd. of Ed., 747 F.2d 111, 112–13 (2d Cir.1984). The Supreme Court has previously explained that "without some protection for seeking out the news, freedom of the press could be eviscerated." Branzburg v. Hayes, 408 U.S. 665, 681 (1972). However, the rights of the public and the press are not absolute, and not without bounds. Globe Newspaper, 457 U.S. at 606. "The right to speak and publish does not carry with it the unrestrained right to gather information." Zemel v.

Rusk, 381 U.S. 1, 17 (1965); see e.g. United States v. Gurney, 558 F.2d 1202, 1208 (5th Cir.1977).

Specifically, the Supreme Court addressed the circumstances where a trial judge may interpose reasonable time, place, and manner restrictions on access to criminal trials:

> Just as government may impose reasonable time, place and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic ... (citation omitted), so may a trial judge in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. '[T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581–82 n. 18, (1980).

Furthermore, a trial judge enjoys broad discretion with matters that concern the activities of his or her court in order to ensure a fair, orderly trial. United States v. Gurney, 558 F.2d at 1209. "Within this discretion ... the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations." Id. at 1210. See eg. United States v. Columbia Broadcasting System, Inc., 497 F.2d 102, 104 (5th Cir. 1974) (stating trial judge has extremely broad discretion to control courtroom activity, even when the restriction touches on matters protected by the First Amendment); Seymour v. United States, 373 F.2d 629 (5th Cir. 1967) (finding trial court's order prohibiting the taking of photos on the same floor of the courtroom fell within the ambit of permissible maintenance of judicial decorum); United States v. Dinitz, 538 F.2d 1214, 1223-24 (5th Cir. 1976); Tsokalas v. Purtill, 756 F. Supp. 89 (1991) (order prohibiting publication of sketches of jurors' likenesses as a reasonable time, place and manner restriction that did not violate the First Amendment).

Historically, federal courts have consistently prohibited the photographing of federal criminal court proceedings. Rule 53 of the Federal Rule of Criminal Procedure states, "Except as otherwise permitted by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." Fed. R. Crim. P. 53. This rule has been found to be constitutional, as a reasonable "time, place, and manner" restriction, by several Circuits. See Conway v. United States, 852 F.2d 187, 188 (6th Cir. 1988); United States v. Edwards, 785 F.2d 1293, 1295-96 (5th Cir. 1986); United States v. Kerley, 753 F.2d 617, 622 (7th Cir. 1985); United States v. Hastings, 695 F.2d 1278, 1282 (11th Cir. 1983). The press's right of access to observe trial proceedings is coextensive with the public's right of access to attend trial proceedings. It provides journalists with the rights to "attend, listen, and report on the proceedings." Id. 1280. "[T]o conclude . . . that the right of access extends to the right to

3

televise, record, and broadcast trials [] misconceives the meaning of the right of access at stake in these cases." Id.

## Analysis

The court should grant the government's request to prohibit the media from sketching the identities of the Officers. As noted above, public disclosure of the identities of these Officers, even by way of sketches, would impair their ability to operate effectively within the Security Service in the future. As the Second Circuit has repeatedly noted, "[t]he state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest." Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) see also United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1274 (2d Cir. 1975) (recognizing the strong government interest in protecting the identities of undercover agents). This is particularly true in this case, where the undercover officers work on highly sensitive national security investigations into groups that are bent on causing harm to both the United States and the United Kingdom, such as al-Qaeda.

Moreover, public disclosure of the identities of the Officers would pose a serious risk to the safety of the Officers scheduled to testify. The fact that the Officers may face retribution for their work from violent global terrorist groups is a separate and sufficient basis to grant this limited request. Just as this Court has permitted the Officers to testify in wigs and light makeup so that they cannot be identified by members of the public watching the live proceedings, the Court should preclude sketches of the Officers so they cannot be identified at a later time by readers of the newspapers or media publications in which their images appear. Furthermore, while these light disguises provide a temporary level of security for the Officers while they are testifying, a sketch that is memorialized by way of publication may serve as a tool to identify the Officers in the future.

This request is narrowly tailored to prohibit only those sketches that might permit members of the public to identify the Officers. The government does not seek to prohibit sketching of any other courtroom scene or any other courtroom participants, or to interfere with the media's right to inform its readers of the developments of the proceedings. See KPNX Broadcasting Co. v. Arizona Superior Court, 459 U.S.1302, 1306 (1982) (declining to stay order of a state trial court requiring that sketch artist drawings of jurors be reviewed by the court before being broadcast on television in part because "[t]he trial has never been closed," "all the proceedings may be reported," and "the [order did] not prohibit the reporting of any facts on the public record") (opinion by sole Justice (Rehnquist) acting as Circuit Justice). While he approved the trial judge's requirement that all sketches be reviewed and approved by the court before being published, Justice Rehnquist nonetheless noted, "I think that in all probability the trial judge's order would be more defensible on federal constitutional grounds if he had flatly banned courtroom sketching of the jurors, and if he had extended the ban to those who sketch for the print media as well as to those who sketch for television." Id. at 1308.

4

   This restriction sought herein does not impinge on the fundamental news dissemination processes of the press nor does it limit fair commentary on the proceedings. "The press is free to attend the entire trial, and to report whatever they observe," including reporting their unfettered observations of the Officers' appearances. <u>Hastings</u>, 695 F.2d at 1282. The Supreme Court has held that such access is sufficient to vindicate the press's right of access to federal criminal trials under the First Amendment. <u>Nixon v. Warner Communications</u>, 435 U.S. 598, 610 (1978) ("The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed.").

## Conclusion

   Because the restriction sought by the government on behalf of its witnesses does not infringe on the press's right of access to public trials, and because it is justified by the compelling interest of maintaining the security of those witnesses, the government respectfully requests that the Court prohibit the press from sketching images of the Officers.

               Respectfully submitted,

               LORETTA E. LYNCH
               United States Attorney

          By:   /s/
               Zainab Ahmad
               Celia A. Cohen
               Michael P. Canty
               Assistant U.S. Attorneys
               (718) 254-7000

cc: Abid Naseer (via certified mail)
  James Neuman (via ECF and email)
  EDNY Press Corps (by email)